# LANDLORD AND TENANT—JUDGMENTS AND DECREES— VENDOR AND PURCHASER.

[Lucas (6th) Circuit Court, June 22, 1907.]

Haynes, Parker and Wildman, JJ.

## ROBERT RAITZ & CO. v. ELIZA J. DOW.

1. SUPERIOR RIGHTS OF LESSEE IN POSSESSION UNDER AN IMPERFECTLY EXECUTED LEASE AS AGAINST PURCHASER WITH NOTICE THEREOF.

Where a tenant has been in possession for a considerable period under an imperfectly executed lease, the writing will be treated as a contract for a lease, and as against a purchaser of the property having knowledge of the fact, who is seeking to oust the tenant, a decree will be granted directing that a valid lease be executed.

[For other cases in point, see 5 Cyc. Dig., "Landlord and Tenant," §§ 65-68. —Ed.]

2. MAGISTRATE'S JUDGMENT IN FORCIBLE ENTRY AND DETAINER NOT A BAR TO INJUNCTION PROCEEDINGS.

An action in forcible entry and detainer in such a case, in which a judgment of ouster has been taken by the purchaser, is not a bar to injunction proceedings brought by the tenant to prevent interference with his possession.

[For other cases in point, see 4 Cyc. Dig., "Forcible Entry and Detainer," § 82.—Ed.]

3. TENANT TAKING PARTNER DOES NOT EFFECT LEASE.

The fact that the lease in its imperfect form was made to a tenant, who subsequently with the knowledge of the lessor brought in another as a partner with him in the business, would not operate under the statute to invalidate the agreement for occupancy.

4. WHERE RENT TO BE PAID.

In the absence of any stipulation to the contrary the leased premises is the place for the payment of rent, and the lessor is not required to demand the rent to put himself in a position to claim a forfeiture but he should go to the premises in due time and give the tenant an opportunity to pay the rent there, unless there is a stipulation for the payment of the rent elsewhere.

[For other cases in point, see 5 Cyc. Dig., "Landlord and Tenant," §§ 533-536.—Ed.]

[Syllabus approved by the court.]

APPEAL from Lucas common pleas court.

**J. H. Boyd** and **C. A. Seiders,** for plaintiff

Cited and commented upon the following authorities: 23 Am. & Eng. Enc. Law (2 ed.) 498; *House* v. *Beatty,* 7 Ohio (pt. 2) 84; *Kelley* v. *Stanbery,* 13 Ohio 408; *Williams* v. *Sprigg,* 6 Ohio St. 585; *McKinzie* v. *Perrill,* 15 Ohio St. 162; *Harvey* v. *Jones,* 12 Dec. Re. 490 (1 Disn. 65) ; *Day* v. *Railway,* 41 Ohio St. 392; *Ranney* v. *Hardy,* 43

Raitz & Co. v. Dow.

Ohio St. 157 [1 N. E. Rep. 523]; *Simmons* v. *Supply Co.* 11 Circ. Dec. 690 (21 R. 455).

**E. E. Davis,** for defendar

**HAYNES, J.**

This case comes into this court upon a petition filed for the purpose of reforming a certain contract and for the purpose of enjoining the defendant from taking certain actions in the case.

It appears from the pleadings and the evidence in the case that about this state of facts existed here: George Ketcham had been the owner of certain land in lower town, fronting on St. Clair street and near Cherry. He rented it for a period of five years to Robert Raitz, and Robert Raitz went into possession—Robert Raitz & Company, the company consisting of his son-in-law and another partner. They occupied the premises, or a certain portion of them at least, for several years, and when the first lease was supposed to expire or about to expire a new lease was taken, and it was made out in the names of Ketcham and Robert Raitz. It was from October 12, 1904, to October 12, 1909, and in its execution it was simply signed by Raitz and Ketcham, with the name of one witness attached to the lease. Raitz & Company continued in possession, doing business there and paying rent to Ketcham until about September 20, 1906, when a warranty deed of the whole premises, of which this, as I understand, is a part, was made by Ketcham to a man by the name of Close—a deed to the whole property in fee simple, being a warranty deed. Two days after that, Close made a deed to Eliza J. Dow, who is the party who now owns the title and the defendant in this controversy. That also is a warranty deed of the whole premises, including this lot, which is lot No. 359, Vistula Division.

We think the evidence taken in the case—all the facts in the case—clearly show that at the time this deed was made from Ketcham to Close and from Close over to Dow, because the title was taken through Close simply as a matter of form, the real party in interest was Dow, who took the deed in the name of his wife. I think the testimony clearly shows that at the time that deed was made or taken it was understood and known by all of the parties that Raitz was in possession of the property, Raitz & Company occupying it under this lease which had not been acknowledged, and that they had knowledge of the lease and of all the rights of the plaintiffs under it, and were chargeable with all the rights that they might claim under it. And it appears to us from the testimony that at the time it was taken the lease mentioned was passed over,

and there was really an understanding between the parties that, so far as the lease was concerned, Dow took it with chances of breaking it, setting it aside, treating it as a nullity; and very soon after that Mr. Raitz was approached with a claim that he should make an advance in rent, it being claimed that his lease was void. He declined to do that, and a suit was commenced soon afterwards before one of the justice's courts in this city in forcible detainer for the purpose of ousting Mr. Raitz, or Raitz & Company, and such proceedings were had there that a judgment on that account was rendered. About the same time this suit was commenced for the purpose of enjoining these parties from proceeding under that judgment in forcible detainer and seeking to enforce the perfection of the lease so that it should continue for the term which was originally agreed upon between Ketcham and Raitz. The case was tried in the court of common pleas and is brought into this court by appeal, and the case has been very earnestly argued, and some testimony has been taken.

We start with these leading facts: That Ketcham owned the property; that he had made a lease to Raitz, and had renewed that lease at the expiration of the first term, at least Raitz continued in possession and continued to pay rent down until this time, to the making of these deeds; and that these parties who received these deeds had full knowledge of all the facts of the case, the imperfection of the lease, the possession of Raitz and of his rights under the possession.

The case has been argued to us by counsel for the defendant, Mrs. Dow, their contention being that this lease, being imperfect, conveyed no right and no title, and that the deed to Close cut off any rights that the party had under the lease. They have cited the case of *Langmede* v. *Weaver*, 65 Ohio St. 17 [60 N. E. Rep. 992], that arose out of a controversy over a conveyance made in regard to an oil lease. In that case the oil lease had been made and was imperfectly executed; but no one had ever taken possession under it. The lease had simply been made and recorded. Subsequently another party purchased the property, and the court held in that case that, under the circumstances of that case, the plaintiff could not obtain any rights as against the purchaser. The court enters into quite a long discussion of the various questions that arose, the opinion having been delivered by Judge Williams for the court, who cites the case of *White* v. *Denman,* 16 Ohio 59, in relation to an imperfectly executed mortgage. The court says page 60:

"As between the original parties to it, there is no difficulty in making the instrument effect the intended object; for equity would

regard as done that which the parties agreed to do. They intended it should operate as a valid incumbrance, and, so far as they are concerned, it must be treated as a sufficient mortgage.''

It has been claimed here that this imperfect lease might be treated as an agreement to make a lease. This has been denied by counsel for defendant, and in this case that he cites himself, the validity of this instrument as a contract is recognized as a contract for a lease. In other words, as the court say, treat the paper as carrying out the purpose that the parties had at the time they made the instrument.

We think there can be no question—we have always so considered and so consider in this suit—that an agreement of this nature is a contract for a lease and may be treated as such. We think it very clear here that these parties have a right to come in and file this petition and ask that this lease be declared to be a valid lease; or, in other words, that the court direct that it be executed as a valid lease so as to conform with the statute. It must be remembered that these parties were in possession and had been for years; that their rights in regard to the matter were known to the defendant. Certainly they could not, as against that knowledge, do anything as against these parties who were thus in possession and who had the rights of parties under a lease, imperfectly executed, it is true, but who had possession under it.

It is said that they never took possession under this particular lease, and that they have no beneficial rights under it. Counsel for defendant refer to the case of *Balt. & O. Ry.* v. *West*, 57 Ohio St. 161 [49 N. E. Rep. 344], and it is suggested that as against the case of *Langmede* v. *Weaver, supra,* the court perhaps changed its opinion, or that the two cases could not be reconciled. The case of *Balt. & O. Ry.* v. *West, supra,* was a case that went up from this court to the Supreme Court, being in regard to some property in the city of Sandusky. There was a lease made there and the railway company went into possession of the premises under the lease. It purported to be a five-year lease, and was made for a five-year lease, but the parties failed to have it acknowledged and recorded. They continued in possession during the five years and then held over. Subsequently and during the middle of the year they vacated the premises, and Mr. West brought suit for the whole of the lease, the rent of that year. Counsel have, as I have said, suggested a doubt about the contention of the court in this regard, or in regard to the fact that they have departed from a decision in another case. But we see no departure; we see no change in the views of the court in any manner or form. The court says, page 165:

"The well-settled rule appears to be, however, that where the lessee enters into possession of the demised premises under a lease for a term of years at an annual rent, if the lease for any cause be void he becomes a tenant for a year at the rent reserved in the lease, and subject to all of its provisions, except its duration; and when his possession is continued into the next year, a tenancy from year to year is created, and continues so long as he enters upon a new year, until the end of the term; and this is so, though the rent be payable quarterly, or monthly, or at shorter periods. And when, after the expiration of the term, he holds over into another year without any new agreement or arrangement with the landlord, the latter may treat him as a tenant for that year at the same rent and upon the same terms and conditions of his prior occupancy, or, as a trespasser, at his election; but if the landlord accepts the rent, or acquiesces in such holding over for a considerable time, his election will be regarded as made in favor of the tenancy, and then it cannot be terminated before the end of the year by either party without the consent of the other."

Now, at the time these deeds were made, as I have stated, these parties were in possession of these premises, the lessor receiving the rent right along and treating them as tenants under the lease. Nearly two pages here of authorities on this subject are cited, and I don't care to read them, because it establishes the doctrine that is claimed by the plaintiff here, and it was claimed by the plaintiff in the case there.

Now, in regard to holding over, and the point stated that there was no new possession, I will read what the court says in this connection in *Balt. & O. Ry.* v. *West, supra,* page 168:

"The tenant, by holding over, is regarded as consenting or proposing to enter upon a new term for another year at the same rent and upon the conditions of the prior occupancy, and the landlord's acceptance of the proposed tenancy is presumed from his receiving the rent, or other acquiescence. The agreement arises by implication of law from the conduct of the parties after the expiration of the former tenancy; and, in this respect, is essentially different from those agreements made by parties while in possession under an existing lease, for a new lease to commence in the future; as was the case of *Armstrong* v. *Kattenhorn,* 11 Ohio 265, and *Crawford* v. *Wick,* 18 Ohio St. 190.

"Here the new agreement grows out of, and is founded upon, the possession evidenced by the holding over, and is therefore referable to it, rather than to the possession under the prior agreement which had expired. The holding over is equivalent to a new entry; or, as said in Reed, Stat. of Frauds, Sec. 806, concerning the application of the stat-

Raitz & Co. v. Dow.

ute in such cases, the 'effect of entry under a void lease, and of holding over after the expiration of a valid one, is identical.' And it is the settled law of this state, that a parol lease for a year, accompanied by possession, is not within the statute of frauds.''

If I understand that decision correctly and the points that are being made by the court there, this continuing possession, holding over, is equivalent practically to a new entry.

It is claimed here that this decision of the justice court was a bar; that is to say, the judgment in the forcible detainer action, and any future action was a bar to this action. We are unable to see how it can be a bar to this action in any manner or form. In a case that arose in Fulton county within the last year we had occasion to discuss this matter, and we adhered to the language of the statute, overruling the court of common pleas, this court holding that the first suit was not a bar to a new suit.

A point was made here by counsel for the defendant that the lease was taken in the name of Raitz. Raitz was the particular party in the firm, the particular man carrying on the business. He took the original lease in his own name and afterwards took in a partner, which was continued without any objection by Ketcham. When this lease was made it was made by Raitz. He signed it, and Raitz and his firm were in possession, and without objection on the part of Ketcham they continued in possession and continued to pay rent. We think there is no trouble about that. We think that as a matter of fact Raitz was in possession, and taking these persons in partnership with him would not operate under any clause of the lease to defeat the object and purpose of the lease, and while there are not many authorities to be found on that point, still under ''landlord and tenant'' there are some authorities.

Another point that was made was that after the property was purchased by Mrs. Dow there was an attempted tender of the rent. The rent had been paid, was payable so much a year and payable in advance, whether it was quarterly or any other way, $1,400 a year. As a matter of fact during the five years Mr. Raitz was in possession he was continually doing work for Mr. Ketcham, and from time to time they had settlements; sometimes there would be a balance due from Mr. Raitz to Ketcham on the rent and he would pay it, and it would go on to another period. But when the new party came in, they wanted to make payments from month to month in the way it had been computed between Ketcham and Raitz theretofore. Well, we don't place much reli-

ance upon that matter. The lease is a modern lease and provides that. the party need not demand his rent from the premises. The common law, of course, required that the lessor should demand his rent on the day when it falls due, at a certain place upon the premises and at a convenient time before sunset. It seems the only change that was made by these provisions is that he is released from the obligation to appear on the premises and demand his rent; but there is nothing to show that the tenant is bound to hunt up the landlord and follow him around and tender his rent. It seems to me that a fair construction of these contracts would be that the landlord should present himself at the place for receiving the rent and that the tenant should be ready to pay at that time, unless there is a stipulation to pay somewhere else. We see nothing in the facts here that should authorize a forfeiture of the premises under that arrangement.

Judge Parker suggests that the parties have never placed themselves in any position to ask for any forfeiture. The ground upon which they have proceeded is that the lease was void; that there was no lease at all. They were there demanding that there should be a payment of $2,000 in rent. There is no demand for forfeiture by reason of failure to pay the $1,400, and as I have stated already we see no ground upon which there should be a defeat of this action by the allegation that has been made in that regard.

Mr. Davis: Doesn't the lease itself provide that the demand of rent is waived?

Judge Parker: Yes; but the rent is to be paid somewhere. Now where? The lease does not stipulate that the lessee shall leave the premises to hunt up the lessor to pay the rent. The general rule, in the absence of stipulation to the contrary, makes the leased premises the place for the payment of rent. We think a fair interpretation of this lease in that regard is that the rent is payable at the premises. The lessor is not required to demand the rent to put himself in a position to claim forfeiture, but he should go to the premises in due time and give the tenant an opportunity to pay the rent there unless there is a stipulation for the payment of the rent elsewhere.

Judge Haynes: The authorities referred to in regard to the partnership are found in Jones, Landl. & Ten. Secs. 468, 469. Now the authorities seem to be very few in regard to transfer, assignment or underletting. They hold here in a case where a lease was made of a house to a single woman which contained a provision that it was let only for herself to occupy as a residence, with covenants against disposition of the whole or any part, that—

Raitz & Co. v. Dow.

＊　＊　＊　"Her marriage to a widower with four children and the continued residence of all in the house was not a breach of the proviso or covenants. The whole instrument taken together clearly contemplated that the lessee should occupy the premises in person, but it did not follow that the narrow construction contended for was the true one. That construction would exclude every one, relative, companion and friend, as well as husband. If the lessor intended that, he should have used language expressing such intent, and should not have left it to be inferred from language of doubtful meaning. The lease as drawn could fairly and reasonably be so interpreted as to allow the lessee to receive a relative, friend or husband as a companion. Where a lease is joint to two and by an arrangement between them each occupies a several portion of the premises, such several uses cannot justly be regarded as breaches of a covenant not to underlet."

In Sec. 469 they say:

"Where a tenant without license from his lessor takes a third party into partnership with him and lets such party enjoy joint possession with him, it is not a breach of a covenant not to sublet, even though the partnership is formed for the express purpose of not breaking the covenant against subletting. If one of the new partners taken into the firm by the lessee is put in exclusive possession of a portion of the leased premises, that would be a breach of the covenant not to assign or underlet."

I think that where a lease is taken as in this case—of course Raitz was the principal party in interest, who had some subordinates who became partners with him—it is not proper to hold that it was a forfeiture of the lease by simply taking them in as partners. Now, he made the lease and the parties went on and continued in possession, and the lessor recognized it by receiving the rents and treating them as tenants, as lessees under the lease, and really we see no ground whatever for forfeiture under that clause of the lease. We are clearly of the opinion from all the evidence in the case that the prayer of the petition should be carried out and enforced. We think the equities of the case are with Robert Raitz and the firm who rented the premises. He was in possession; he was doing a straightforward business, paying his rent and going on, and these parties purchased with full knowledge of that. We think by every principle of equity and justice between the parties, between these parties who had knowledge of it, that the prayer for the enforcement of the lease should be granted and it should be held to be a lease of the premises up to the period of time stated in the lease, October, 1909.

Lucas County.

JUDGE PARKER: The lease as reformed will stand as it is written. The only reformation will be in the matter of the execution, and if a new lease is not executed, or this lease is not acknowledged, of course the decree of the court will supply it. It will devolve upon the parties to solve this question, as to whether that rental is payable at the rate of $1,400 a year, yearly in advance. We do not pass upon that question. It is not involved in this case at all.

MR. BOYD: If Your Honors please, counsel for plaintiff has requested to state the time within which the defendants are allowed to execute a lease, whether it is five days or ten days.

JUDGE PARKER: Oh, well, it is not a matter of much importance.

MR. BOYD: The order in the court of common pleas was five days.

JUDGE PARKER: Well, they can take their time to it; give them ten days.

JUDGE HAYNES: If they don't, the decree of the court will stand exactly as the same. It is not very important whether they execute it or not.

Parker and **Wildman, JJ.,** concur.